IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| RONALD ROCHA, | § | CV NO. 5:14-cv-867-DAE |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| THE CITY OF SAN ANTONIO, | § | |
| | § | |
| Defendant. | § | |
| _____ | § | |

ORDER: (1) DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND;
(2) GRANTING DEFENDANT'S MOTION TO DISMISS;
(3) DENYING DEFENDANT'S SECOND MOTION TO DISMISS

Before the Court are: a Motion to Amend filed by Plaintiff Ronald Rocha ("Plaintiff") (Dkt. # 19); and a Motion to Dismiss (Dkt. # 13) and a second Motion to Dismiss (Dkt. #21) filed by the City of San Antonio ("Defendant" or "San Antonio").  Pursuant to Local Rule 7(h), the Court finds the matters suitable for disposition without a hearing.  For the reasons that follow, the Court **DENIES** Plaintiff's Motion for Leave to Amend (Dkt. # 19), **GRANTS** Defendants' Motion to Dismiss (Dkt. # 13), and **DENIES AS MOOT** Defendant's Second Motion to Dismiss (Dkt. # 21).

1

BACKGROUND

On October 3, 2014, Plaintiff filed a pro se Complaint alleging that Defendant has and continues to desecrate and destroy historical archeological sites and Native American burial grounds, including the Hemisfair Historical Park ("Hemisfair"), Alamo Plaza, the Alamo, and La Villita (collectively "the Locations").[1]  (Dkt. # 10 at 2.)  Plaintiff alleges that because he is a direct lineal descendant of the Yanaguana tribes, he has a right to the Locations taken from his ancestors.  (Dkt. # 10 at 1–2; Dkt. # 14 at 1.)

Plaintiff contends that his allegations give rise to claims under the United States Constitution, the Native American Graves Protection and Repatriation Act ("NAGPRA"), the Archeological Resources Protection Act ("ARPA"), the American Indian Religious Freedom Act ("AIRPA"), the Texas Parks and Wildlife Code (the "Code"), and San Antonio's Unified Development Code ("UDC").  Plaintiff requests a permanent injunction: (1) stopping any and all scheduled demolition and/or destruction of the Locations; (2) permanently classifying the Alamo as a Native American burial site and consecrated battlefield; (3) returning Native American corpses to the Alamo for burial; (4) removing the

---

[1] Plaintiff also alleges in his Surreply that Defendant stole dedicated land from the Hemisfair for an emergency access road and a construction company's parking lot without an ordinance.  (Dkt. # 17 at 2.)  However, at the Motion to Dismiss stage, the Court is limited to the facts as set forth in the pleadings.  Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000).

paved road in front of the Alamo; and (5) ordering Defendant to issue a public

apology.  (Dkt. # 10 at 4–5.)  Plaintiff also seeks $250,000,000 in compensatory

damages.  (Dkt. # 10 at 5.)

On February 6, 2015, Defendant filed a Motion to Dismiss.  (Dkt.

# 13.)  On February 20, 2015, Plaintiff filed his Response to Defendant's Motion.

(Dkt. # 14.)  On March 2, 2015, Defendant filed its Reply, and on March 23, 2015

(Dkt. # 15), Plaintiff filed a Surreply (Dkt. # 17).

On April 4, 2015, Plaintiff filed a "Motion First Amended Petition

and Application for Permanent Injunction," which the Court construes as a Motion

for Leave to Amend the Complaint.  (Dkt. # 19.)  On April 9, 2015, Defendant

filed a Second Motion to Dismiss (Dkt. # 21), to which Plaintiff responded on

April 27, 2015 (Dkt. # 22).

## LEGAL STANDARD

I.     Motion to Amend

Under Federal Rule of Civil Procedure 15, a party has 21 days to

amend a pleading as a matter of course.  Fed. R. Civ. P. 15(a).  To amend a

pleading after that period but before the pleading deadline set forth in the

scheduling order, a party must obtain the opposing party's consent or the court's

permission.  Id.

3

Generally, courts permit a plaintiff at least one opportunity to amend her complaint within the time permitted by the scheduling order.  Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 329 (5th Cir. 2002); Stripling v. Jordan Prod. Co., LLC, 234 F.3d 863, 872–73 (5th Cir. 2000). In deciding whether to grant leave, district courts consider the following five factors: (1) "undue delay," (2) "bad faith or dilatory motive on the part of the movant," (3) "repeated failure to cure deficiencies by amendments previously allowed," (4) "undue prejudice to the opposing party by virtue of the allowance of the amendment," and (5) "futility of the amendment."  Rosenzweig v. Azurix Corp., 332 F.3d 854, 864 (5th Cir. 2003) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

II.    Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  In analyzing a motion to dismiss for failure to state a claim, the court "accept[s] 'all well pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  United States ex rel. Vavra v. Kellogg Brown & Root, Inc., 727 F.3d 343, 346 (5th Cir. 2013) (quoting In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007)).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

III.    Pro Se Pleadings

It is well established that courts must liberally construe the filings of pro se litigants. Haines v. Kerner, 404 U.S. 519, 520–21 (1972); Windland v. Quarterman, 578 F.3d 314, 316 (5th Cir. 2009) (noting the "well-established precedent requiring that [the court] construe pro se briefs liberally"). Accordingly, during a sufficiency inquiry, courts hold pro se complaints to "less stringent standards than formal pleadings drafted by lawyers." Hale v. King, 642 F.3d 492, 499 (5th Cir. 2011) (internal quotation marks omitted) (quoting Calhoun v. Hargrove, 312 F.3d 730, 733 (5th Cir. 2002)). Nevertheless, pro se parties must still "abide by the rules that govern the federal courts" and must "properly plead sufficient facts that, when liberally construed, state a plausible claim to relief." E.E.O.C. v. Simbaki, Ltd., 767 F.3d 475, 484 (5th Cir. 2014) (internal quotation marks omitted).

DISCUSSION

I.      Motion to Amend

As proposed, Plaintiff's Amended Complaint will add causes of action under the U.S. Constitution, the Texas Constitution, and Title II of the Civil Rights Act.  (Dkt. # 19 at 1–2.)  Although Plaintiff is correct that he is generally entitled to an amendment within the deadline set forth in the scheduling order, he is only so entitled if the proposed amendments are not futile.  See Rosenzweig, 332 F.3d at 864.  An amendment is futile when it "would fail to state a claim upon which relief could be granted," as determined under the 12(b)(6) standard.  Stripling, 234 F.3d at 873.

A.      Claims Under the U.S. Constitution

Plaintiff alleges claims under the First and Sixth Amendments.  The Court addresses each in turn.

The First Amendment, made applicable to the states by the Fourteenth Amendment, Cruz v. Beto, 405 U.S. 319, 322 (1972), guarantees three freedoms: freedom of religion, freedom of speech and the press, and freedom to peaceably assemble and petition the government.  U.S. Const. amend. I.  Plaintiff alleges that his "[r]eligious practices are being permanently damaged and continue be injured" by Defendant's desecration and destruction of the burial grounds at the Locations.  (Dkt. # 19 at 1.)

6

The First Amendment has two components related to religious freedom: the Free Exercise clause, which prohibits the government from issuing laws that impede the free exercise of religion, <u>Church of the Lukumi Bablu Aye, Inc. v. City of Hialeah</u>, 508 U.S. 520, 532 (1993), and the Establishment Clause, which prevents the government from promoting or affiliating with a particular religion and from discriminating on the basis of religion.  <u>Cnty. of Allegheny v. ACLU Greater Pittsburgh Chapter</u>, 492 U.S. 573, 590 (1988), <u>abrogated on other grounds by</u> <u>Town of Greece v. Galloway</u>, 134 S. Ct. 1811 (2014).  Plaintiff's Complaint and proposed amendments fail to address which of his religious practices are being injured and how the current use of the Locations impedes that practice.  Without providing such information, Plaintiff has failed to state a plausible claim under the First Amendment.  The First Amendment claim is therefore futile.

The Sixth Amendment establishes various rights for criminal defendants.  U.S. Const. amend. VI.  Because the current case is a civil case, the Sixth Amendment has no application to the facts of the case, and the claim is therefore futile.

B.    <u>Texas Constitution</u>

Plaintiff alleges claims under the Texas Constitution, Article 1, §§ 1, 2, 3, 3a, 4, 5, 6, 8, 17, 19, and 27.  The Court addresses each claim in turn.

Section 1 and Section 2 confer no substantive rights; they are statements about the sovereignty of the state and the people's ability to amend the Texas Constitution, respectively.  Tex. Const. art. 1, § 1 ("Texas is a free and independent State, subject only to the Constitution of the United States, and the maintenance of our free institutions and the perpetuity of the Union depend upon the preservation of the right of local self-government, unimpaired to all the States"); id. § 2 ("All political power is inherent in the people, and all free governments are founded on their authority, and instituted for their benefit.  The faith of the people of Texas stands pledged to the preservation of a republican form of government, and, subject to this limitation only, they have at all times the inalienable right to alter, reform or abolish their government in such manner as they may think expedient.").  Accordingly, Plaintiff cannot raise claims under said sections, and those claims are futile.

Section 3 is the Texas Constitution's Equal Protection Clause, which requires that "all persons similarly situated . . . be treated alike."  Kohout v. City of Fort Worth, 292 S.W.3d 703, 711 (Tex. App. 2009) (internal quotation marks omitted).  Because Plaintiff has not alleged facts showing that he has been treated differently than other similarly situated parties, id., Plaintiff has failed to make factual allegations sufficient to support a claim under Section 3, and that claim is futile.

8

Section 3a is the Equal Rights Amendment to the Texas Constitution, which prohibits unequal treatment based on sex, race, color, creed, or national origin.  Bell v. Low Income Women of Tex., 95 S.W.3d 253, 257 (Tex. 2002).  To prove a violation of § 3a, a plaintiff must demonstrate that "equality was denied because of a person's membership in a protected class of sex, race, color, creed, or national origin."  Id. (emphasis in original).  If so, the action "cannot stand unless it is narrowly tailored to serve a compelling governmental interest."  Id.  Because Plaintiff has not alleged any facts showing that he was personally denied equality, his claim under § 3a is futile.

Section 4 and 5 are wholly inapplicable to Plaintiff's factual allegations: they prohibit disqualifications of public officers or witnesses based on religion.  Tex. Const. art. 1, §§ 4, 5.  Because they raise no plausible basis for relief, the claims are futile.

Section 6 protects the freedom to worship.  Id. § 6.  The Texas Supreme Court treats § 6 as coextensive with the First Amendment, unless the plaintiff argues that the application of each is different, which has not been done here.  Tilton v. Marshall, 925 S.W.2d 672, 677 n.6 (Tex. 1996).  As discussed above, Plaintiff has failed to make out a religious liberty claim because he has not alleged which of his religious practices are being injured and how the current use of the Locations impedes that practice.  Accordingly, the § 6 claim is futile.

9

Section 8 protects freedom of speech.  Tex. Const. art. 1, § 8.  Plaintiff has alleged no facts in his Complaint or proposed amendments that relate to a violation of freedom of speech.  Accordingly, the § 8 claim is futile.

Section 17 is the takings provision of the Texas Constitution, which applies when the state government "physically appropriates or invades <u>private</u> property, or unreasonably interferes with the <u>landowner's</u> right to use and enjoy it." <u>Porretto v. Patterson</u>, 251 S.W.3d 701, 707 (Tex. App. 2007) (emphasis added); <u>see also</u> <u>AMV-HOU, Ltd. v. Capital Metro. Transp. Auth.</u>, 262 S.W.3d 574, 583 (Tex. App. 2008) (considering § 17 the state equivalent of the federal Takings Clause and holding that federal law should be used to interpret its scope).  "It is fundamental that, to recover under the constitutional takings clause, one must first demonstrate an ownership in the property taken." <u>Tex. Dep't of Transp. v. City of Sunset Valley</u>, 146 S.W.3d 637, 644 (Tex. 2004).  Plaintiff has not alleged any particular ownership of the Locations, nor a chain of title that gives him some property interest.  <u>See, e.g.</u>, <u>Bingham v. Mass.</u>, No. 08-11770-GAO, 2009 WL 1259963, at *1 (D. Mass. May 6, 2009) (dismissing suit where plaintiffs, "descendants of the South Sea Indians," brought a takings action against Massachusetts for taking particular land and noting that if the deed conveyed the land to the tribe, only the tribe could bring the suit and if the deed conveyed the land to individual members, the plaintiffs would have to show that they had an

"inherited interest traceable through the generations from the seventeenth century to the twenty-first from particular individuals who took individual property rights as a consequence of the deed").  Accordingly, Plaintiff lacks standing to pursue his § 17 claim, and that claim is futile.

Section 19 is Texas's due process clause, which affords procedural and substantive protections for rights in life, liberty, and property.  Tex. Const. art. 1, § 19; Price v. City of Junction, Tex., 711 F.2d 582, 590 (5th Cir. 1983).  To make out a due process claim under Texas law, a plaintiff must, at a minimum, allege a vested and protected liberty or property interest.  Univ. of Tex. Med. Sch. at Hous. v. Than, 901 S.W.2d 926, 929 (Tex. 1995).  As described above, neither Plaintiff's Complaint nor the proposed amendments provide any factual allegations that show a protected property interest in the Locations.  Accordingly, his § 19 claim is futile.

Section 27 protects the right to peaceably assemble and petition the government for redress.  Tex. Const. art. 1, § 27.  Plaintiff has made no claims in his Complaint or proposed amendments that relate to a violation of said rights. Accordingly, the § 27 claim is futile.

C.    Title II of the Civil Rights Act

Title II of the Civil Rights Act prohibits discrimination in public accommodations.  42 U.S.C. § 2000a; Fahim v. Marriott Hotel Servs., Inc., 551

11

F.3d 344, 345 (5th Cir. 2008).  To make out a claim under Title II, a plaintiff must make factual allegations showing that: "(1) []he is a member of a protected class; (2) []he attempted to contract for the services of a public accommodation; (3) []he was denied those services; and (4) the services were made available to similarly situated persons outside h[is] protected class."  Fahim, 551 F.3d at 350.  Apart from alleging that he is a Mission Indigenous Lineal Descendant, Plaintiff has made no factual allegations that support the elements of a Title II claim. Accordingly, that claim is futile.

      D.    <u>Conclusion</u>

      Because all of the new claims raised in the proposed Amended Complaint are futile, the Court **DENIES** Plaintiff's Motion for Leave to Amend (Dkt. # 19).

II.    <u>Motion to Dismiss</u>

      In its Motion to Dismiss, Defendant argues that all of the claims in Plaintiff's Complaint must be dismissed, either because the claims do not apply to state or municipal land or because Plaintiff has failed to allege sufficient facts to support his cause of action.[2]  (Dkt. # 13 at 5–8.)  The Court addresses each argument in turn.

---

[2] Defendant's Motion to Dismiss does not argue for dismissal of Plaintiff's claim under the American Indian Religious Freedom Act.  However, Defendant argues

A.      NAGPRA and ARPA Claims

Defendant argues for dismissal of Plaintiff's NAGPRA and ARPA claims because they do not provide a remedy for sites located on municipal or state land.  (Dkt. # 13 at 6.)  In response, Plaintiff maintains that he can prove the Acts provide a cause of action under his Complaint.  (Dkt. # 17 at 1.)  He provides evidence showing that pre-historic bodies were found in the vicinity of La Villita (Dkt. # 14-1, Ex. A at 3), and that Native Americans lived in what is now known as La Villita and Alamo Plaza before the missionaries arrived in Texas (id. at 28). Nonetheless, Plaintiff acknowledges that the Acts require the historical site to be located on federally owned land.  (Dkt. # 14 at 3–4.)

The scope of NAGPRA is limited to cultural items, including human remains, found on federal or tribal lands.  Romero v. Becken, 256 F.3d 349, 354 (5th Cir. 2001) (citing 25 U.S.C. § 3002(a)).  NAGPRA defines federal land as any land, other than tribal land, which is controlled or owned by the United States, and tribal lands as land existing within the exterior boundaries of any reservation or dependant Indian community.  25 U.S.C. §§ 3001(5), (15)(A)–(B).

---

for its dismissal in his Reply.  (Dkt. # 15 at 2.)  Because Plaintiff had the opportunity to respond and did in fact respond to this argument in his Surreply (Dkt. # 17 at 1), the Court will address the argument herein.  See Vais Arms, Inc. v. Vais, 383 F.3d 287, 292 (5th Cir. 2004).

ARPA protects archaeological resources and sites which are located on public or Indian lands.  16 U.S.C. §§ 470aa(a)(1), 470ee, 470ff.  Under ARPA, public land is defined as lands owned and managed by the United States, id. § 470bb(3)(A), and Indian lands as lands that belong to Indian tribes or individuals, held in trust by the United States or subject to a restriction against alienation imposed by the United States, id. § 470bb(4).

Plaintiff cannot demonstrate that the Locations are on federal, public, or Indian land.  His argument that the Alamo Plaza Master Plan of 1994 demonstrates that Alamo Plaza is federal property is meritless.  The document does not address the ownership of Alamo Plaza.  (Dkt. # 14-1, Ex. A at 77.)  Moreover, Defendant has provided affidavits certifying that the Alamo itself is owned by the State of Texas; Alamo Plaza, La Villita,[3] and the dedicated Park parcels of the Hemisfair Park are owned by San Antonio; and Hemisfair Park is owned by the Hemisfair Park Public Facilities Corporation, which was created by San Antonio.  (Dkt. # 13-1 at 2; Dkt. # 13-2 at 2.)  Because the Locations are not federal, public, or Indian lands as required under NAGPRA and ARPA, Plaintiff has failed to state a claim under NAGRPA or ARPA.  See Becken, 256 F.3d at 354 (upholding the district court's dismissal of the plaintiff's NAGPRA claims, where it was

---

[3] Plaintiff's own evidence also states that the City of San Antonio owns La Villita. (Dkt. # 14-1, Ex. A at 6.)

undisputed that the remains were found on municipal land); <u>Kawaiisu Tribe of Tejon v. Salazar</u>, No. 1:09-CV-1977, 2011 WL 489561, at *8 (E.D. Cal. Feb. 7, 2011) (dismissing plaintiff's NAGPRA and ARPA claims because the land was private property, not tribal land as the plaintiffs argued).

      B.    <u>AIRFA Claim</u>

        Defendant argues that Plaintiff does not have a valid claim under AIRFA because he has provided no facts supporting such a claim.  (Dkt. # 15 at 2.) Plaintiff responds that Defendant violated AIRFA by failing to comply with the regulations requiring consultation with Plaintiff regarding the taking of Hemisfair park.  (Dkt. # 14 at 4.)

        AIRFA does not provide any judicial remedy for Native Americans, <u>Lyng v. Nw. Indian Cemetary Protective Ass'n</u>, 485 U.S. 439, 455 (1988); it is a policy statement promoting the federal government's protection and preservation of freedom of religion and expression, particularly pertaining to "access to [Indian sacred] sites, use and possession of sacred objects, and the freedom to worship through ceremonials and traditional rites."  42 U.S.C. § 1996; <u>see also</u> <u>id.</u> (describing the law as having "no teeth").[4]  Accordingly, Plaintiff cannot make out a claim under AIRFA.

---

[4] Plaintiff also mentions Executive Order No. 13007 in his Response and Surreply. (Dkt. # 14 at 3; Dkt. # 17 at 1.)  Although the Court need not address his argument,

C.      Constitutional Claims

Defendant argues for dismissal of Plaintiff's constitutional claims because Plaintiff fails to specify as to how his rights have been violated under the Constitution.[5]  (Dkt. # 13 at 7.)  Plaintiff's Complaint asserts violations of the Privileges and Immunities Clause and the Second, Fourth, Fifth, Thirteenth, and Fourteenth Amendments.[6]  (Dkt. # 10 at 2.)  The Court analyzes each constitutional claim in turn.

1.      Article IV Privileges and Immunities Clause

The Privileges and Immunities Clause of Article IV holds that states must afford citizens from other states the same protection of fundamental rights that they would afford their own citizens.  McBurney v. Young, 133 S. Ct. 1709, 1714 (2013).  Here, Plaintiff is seeking a permanent injunction to stop the alleged desecration of Native American burial grounds and development for profit on the

---

since the Order is not raised in Plaintiff's Complaint, the Court notes that the Order only applies to locations on federal land.  Exec. Order No. 13,007, 61 Fed. Reg. 26,771 (May 24, 1996).

[5] In Plaintiff's Surreply, Plaintiff states that the First Amendment of the Constitution and Article I, Section Six of the Texas Constitution grant him Freedom of Worship.  (Dkt. # 17 at 1–2.)  Because these claims were not raised in Plaintiff's Complaint, they are irrelevant to the Court's analysis.

[6] The Court construes such claims from the following language from Plaintiff's Complaint: "Section 2, 4, 5, 13, and 14 of the United States Constitution, Rights, Privileges and Immunity as a citizen of the United States."  (Dkt. # 10 at 2.)

basis that he has a vested interest in the land.  (Dkt. # 10 at 3–4, 6; Dkt. # 14 at 1.)

Because he has failed to allege facts showing that he was burdened by any state

laws as a result of being an out-of-state citizen, Plaintiff does not have a valid

claim under the Privileges and Immunities Clause.

2.    <u>Fifth and Fourteenth Amendments</u>

The Fifth Amendment has two relevant sections for the purposes of

this action: the Due Process Clause, which prohibits the deprivation of property

without due process, and the Takings Clause, which prohibits the deprivation of

private property for public use without just compensation.  U.S. Const. amend. V.

Plaintiff has failed to allege facts supporting a claim under either clause.  Although

the Takings Clause is applicable to the states through the Fourteenth Amendment,

<u>Dolan v. City of Tigard</u>, 512 U.S. 374, 383 (1994), Plaintiff has not alleged any

facts to demonstrate a constitutionally protected property right, <u>Bryan v. City of</u>

<u>Madison, Miss.</u>, 213 F.3d 267, 274 (5th Cir. 2000).  Accordingly, any Takings

Clause claim is invalid under federal law for the same reasons as cited earlier with

regard to Texas law.

For the same reasons, Plaintiff's due process claim, made applicable

to the States through the Fourteenth Amendment, cannot survive.  In order to

properly state a claim under the Due Process Clause, a plaintiff must allege that

"he has a protected interest" and "has been deprived of that interest without due

process of the law." <u>Houston v. City of New Orleans</u>, 675 F.3d 441, 455 (5th Cir. 2012).  Although Plaintiff has made the conclusory argument that he has a vested interest in the Locations (Dkt. # 14 at 1), he has provided no support for this statement in his Complaint and thus cannot show that he has been deprived of his property.  Consequently, Plaintiff does not have a valid cause of action under the Fourteenth Amendment.

The Fourteenth Amendment separately contains a Privileges or Immunities Clause, which has a very narrow reach, protecting "only uniquely federal rights such as the right to petition Congress, the right to vote in federal election, the right to interstate travel, the right to enter federal lands, or the rights of a citizen while in federal custody." <u>Deubert v. Gulf Fed. Sav. Bank</u>, 820 F.2d 754, 760 (5th Cir. 1987); <u>see also</u> <u>McDonald</u>, 561 U.S. at 754, 808–09 (recounting the historical narrowing of the clause).  Because Plaintiff has not alleged facts supporting a violation of one of these unique federal rights, he has no valid cause of action under the Privileges or Immunities Clause of the Fourteenth Amendment.

### 3.    Second, Fourth, and Thirteenth Amendments

The Second Amendment protects a citizen's right to bear arms and to form a militia, U.S. Const. amend. II, the Fourth Amendment protects citizens against the conduction of unreasonable searches and seizures executed without a warrant or probable cause, U.S. Const. amend. IV, and the Thirteenth Amendment

18

prohibits slavery within the United States, U.S. Const. amend. XIII. These amendments have no relationship to the factual allegations set forth in Plaintiff's Complaint, and Plaintiff has no valid causes of action under them.

      D.    <u>Texas Parks and Wildlife Code Claim</u>

      Defendant argues that Plaintiff's claim under Chapter Twenty-Six of the Code should be dismissed because Plaintiff has failed to allege sufficient facts to support his claim. (Dkt. # 13 at 7.) Plaintiff alleges in his Complaint that Defendant violated the Code by destroying an unknown number of Native American gravesites. (Dkt. # 10 at 5.) Furthermore, in Plaintiff's Response to Defendant's Motion, Plaintiff claims Defendant violated the Code by failing to consult with Plaintiff regarding the taking of Hemisfair Park. (Dkt. # 14 at 4.)

      The Code states that any city within Texas is forbidden from approving a project which necessitates "the use or taking of any public land" that is categorized as a historic site unless certain there is no feasible alternative and the city has provided notice a public hearing. Tex. Parks & Wildlife Code § 26.001(a). Consequently, to make a valid claim under the Code, a plaintiff must show that the city or state approved a project that required the use or taking of a historic site, that the taking was preceded by notice and a hearing, and that there is no feasible alternative to the taking. <u>Id.</u> at (a), (b). Any claim under the statute must be made within 30 days of approval of the taking "or the review is barred." <u>Id.</u> § 26.003.

Even if a liberal construction of Plaintiff's Complaint gives rise to allegations of takings of historic sites for the redevelopment of Hemisfair Park, Plaintiff has not sufficiently alleged that Defendant failed to comply with the notice and hearing requirements of the statute. There are two required notice provisions: notice to the person or entity currently supervising the historic site, and notice to the public. Id. § 26.002(a), (c). Plaintiff has failed to allege facts supporting a violation of either requirement, and Defendant's failure to personally consult with Plaintiff—a particular member of the public—regarding the Hemisfair parcels is irrelevant. Moreover, because the project was approved in 2012,[7] Plaintiff is far beyond the 30-day limitations period that the law provides. Accordingly, Plaintiff has failed to state a claim under the Texas Parks and Wildlife Code.

E.   Defendant's UDC Claims

Defendant argues that Plaintiff's claims under the UDC must be dismissed because they are conclusory and unsupported by sufficient factual allegations. (Dkt. # 13 at 8.) In his Complaint, Plaintiff argues that Defendant violated §§ 35-630 and 35-634 of the UDC by (1) holding festivals, allowing the

---

[7] The Court takes judicial notice of the ordinance approving the project. San Antonio, Tex. Ordinance 2012-02-09-0084 (Feb. 9, 2012); see also United States v. City of Miami, Fla., 664 F.2d 435, 446 (5th Cir. 1981) (taking judicial notice of city ordinance).

sale and consumption of alcohol, and placing portable restrooms on this land, thus desecrating Native American sacred burial grounds, and (2) not following the guidelines for taking the Hemisfair dedicated park parcels.  (Dkt. # 10 at 4–5.)

Section 35-630 states that designated archeological sites are to be treated as any other special or significant resource and sets forth the requirements for who must review these sites and the procedure that shall be followed for such review.  San Antonio, Tex. Unified Dev. Code § 35-630(a).  Section 35-634 states that if a cemetery is classified as special or significant, any design or construction changes to that cemetery must be approved by the appropriate commission. Id. § 35-634.  These ordinances are meant to control design changes to important archeological sites; they do not address what types of activities would be inappropriate on the grounds of an archeological site or what the proper procedure for the taking of such a site would be.  Id. §§ 35-630; 35-634.  Accordingly, Plaintiff has failed to state a claim under the UDC.

     F.    <u>Conclusion</u>

Without a valid underlying cause of action, Plaintiff cannot obtain injunctive relief.  <u>Filgueira v. U.S. Bank Nat'l Ass'n</u>, 734 F.3d 420, 423 (5th Cir. 2013).  Accordingly, Plaintiff's claim for injunctive relief fails, and the Court **GRANTS** Defendant's Motion to Dismiss (Dkt. # 4).

III.    Second Motion to Dismiss

Because the Court denied Plaintiff leave to amend, Defendant's second Motion to Dismiss (Dkt. # 21) is **DENIED AS MOOT.**

CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion for Leave to Amend (Dkt. # 19), **GRANTS** Defendant's Motion to Dismiss (Dkt. # 4), and **DENIES AS MOOT** Defendant's Second Motion to Dismiss.  Accordingly, Plaintiff's claims are **DISMISSED WITHOUT PREJUDICE.**

**IT IS SO ORDERED.**

**DATED**: San Antonio, Texas, July 2, 2015.

_____
David Alan Ezra
Senior United States Distict Judge

22